SCHOTT, Judge.
This is a suit by plaintiff, Reserve Fleeting and Harbor Service, Inc., against defendants, T. M. Beadle and T. M. Beadle & Co., Inc., real estate brokers for an accounting of $15,000 advanced to them for obtaining options and leases for plaintiff. Also made defendant was Aetna Casualty & Surety Co.,[1] as surety on the bonds furnished by defendants pursuant to LSA-R.S. 37:1447 as written before Act 514 of 1978. The trial court awarded plaintiff $15,000 subject to a credit of $7,399.89. Defendants, Beadle and his company, appealed but have filed no brief in this court. Aetna has not appealed. Plaintiff has appealed seeking an increase in the judgment to the full $15,000 claimed and to have judgment against Aetna in the amount of $5,000. The issues are essentially factual, that is, whether the testimony and documentary evidence support the trial court's allowance of the credit in favor of defendants.
*315 This rather confused record shows that around the beginning of 1976 one Leroy Buras was operating a company called East-West Towing Company and employed T. M. Beadle, a real estate broker, to obtain leases on the Mississippi River batture property in a designated area of St. John the Baptist Parish to be used in a barge fleeting operation. On February 26, 1976, East-West issued its check to Beadle for $5,000 as an advance of funds to be used by Beadle in the procurement of the options and leases. This check was returned by the bank as NSF but on March 3 Buras delivered a cashier’s check to Beadle for the $5,000. Between February 28 and May 13, 1976, Beadle did obtain a number of. options and leases in behalf of East-West Towing Company.
While the project was progressing in the name of East-West William Von Hoene became involved by applying for the permit for the operation from the Corps of Engineers on January 9, 1976. However, the application was in the name of Reserve Fleeting and Harbor Service, Inc., a corporation which he later formed on April 2. In any event, Von Hoene, an attorney, issued two additional checks for $5,000 each to Beadle on May 3 and May 13, 1976, and he apparently bought Buras’ interest in the project on May 7 for the account of Reserve Fleeting.
Plaintiff sought to prove that it got nothing in return for the $15,000 it had advanced to Beadle. In pleadings and argument plaintiff alleged that Beadle never delivered any of the leases and options he had supposedly obtained in plaintiff’s behalf until the suit was filed despite repeated demands on Beadle for an accounting. In support of its position plaintiff offered the deposition of Leroy Buras who testified that he had given the initial $5,000 to Beadle for the purpose of securing options and leases, he was subsequently advised by Beadle that he had obtained some, but in spite of numerous attempts to see the documents at Beadle’s office he was never allowed to do so. His testimony was contradicted by Beadle.
Beadle’s version of the facts are as follows: He had never heard of plaintiff but at all times understood that Buras was acting in behalf of East-West Towing. He accepted the employment and the first $5,000 from Buras and had obtained a number of options and leases for East-West. He produced at the trial three signed options and six leases signed by the lessors only, along with canceled checks to the various lessors and optionors for $5,164.80. He contacted Buras right after the leases and options were obtained and was instructed by Buras simply to hold onto the documents in his office and to continue with his efforts. When he received the checks from Von Hoene he assumed that Von Hoene was East-West’s attorney but still had no knowledge of plaintiff’s involvement in the case. The arrangement made with Buras was that he would be paid commissions for and reimbursed for all expenses he incurred in obtaining the leases and options. He employed one Jerry Roberson to assist him with the project and incurred some of expenses for Roberson’s salary and an automobile leased for his use.
Beadle produced only two signed options at the trial of the case, one from Malcolm McDonaldson and the other from Landmark Land Company. In connection with these he produced his canceled checks of $53 to McDonaldson and $578 to Landmark. Although he produced no written lease in favor of Elmer Lapeyrolerie he did produce a canceled check for $85 for the option on that individual’s property. The trial judge allowed Beadle a credit for $5,164.80 which included the $716 spent by Beadle on the options. The remaining $4,448.80 credit allowed Beadle was based on Beadle’s canceled checks issued to lessors appearing in six lease forms produced by Beadle.
These lease forms are for bilateral contracts requiring the signature of a lessee. For some reason not explained in the record, Beadle apparently paid the full first year’s rent to each one of these prospective lessors without having any of the agreements signed by the lessees, although the lease form called for the lessee’s signature. *316 Furthermore, the final paragraph in each lease (which Beadle stated he insisted on being included in the leases) provided for a commission payable to Beadle “at the signing of this lease.” Nevertheless the trial judge gave Beadle full credit for all of the sums expended in securing both options and leases. In doing so he apparently accepted Beadle’s testimony as true and rejected the testimony of Buras. He likewise resolved in favor of Beadle the conflict in testimony over Beadle’s right to be reimbursed for his expenses. For our purposes on appeal we accept this credibility call and accept the testimony of Beadle as true. However, for other reasons we do not reach the same ultimate conclusion as did the trial judge.
With respect to the credit of Beadle for the sum paid to the prospective lessors, it seems clear that Beadle is not entitled to such credit. Common sense dictates that Beadle was supposed to secure options and only if the necessary options were obtained in order to make the project work would leases be signed with the optionors. In effect, plaintiff, or its predecessor East-West, wanted to reserve the right to see if sufficient options were obtained before signing any lease. Thus, the lease agreements called for execution by lessees and Beadle exceeded his authority when he made rental payments before the leases were signed by plaintiff or East-West. On the other hand, taking Beadle’s testimony as true it seems clear that defendants were entitled to be reimbursed for the $716 he spent in securing the options. As to the expenses, the trial judge awarded defendants a credit of $2,235.09 which was 90% of the amount defendants claimed on the basis of Beadle’s testimony that 90% of Roberson's time was spent on plaintiff’s project. While Roberson, in deposition, testified that he spent only 50% of his time on the project the trial judge resolved that conflict in favor of Beadle, and the resolution of such conflicts will not be disturbed on appeal. Thus, we have concluded that the defendants are entitled to a total credit of only $2,951.09.
Plaintiff also seeks a judgment against Aetna Casualty & Surety Company in solido with the Beadle defendants for $5,000. Aetna had issued two separate surety bonds, one to the Beadle Company and the other to Beadle personally for $5,000 each. On March 20, 1979, plaintiff obtained a default judgment against Aetna that in the event there be judgment rendered against Beadle personally there would be judgment against Aetna for the $5,000 on the personal bond. Aetna subsequently paid off the $5,000 on this bond. Since plaintiff has now obtained judgment against the Beadle Company and since we will amend that judgment to an amount in excess of $5,000 plaintiff is entitled to a judgment against Aetna on the bond written for the Beadle Company.
Accordingly, the judgment appealed from is amended and is recast to read as follows: There is judgment in favor of plaintiff Reserve Fleeting & Harbor Service, Inc. and against defendants T. M. Beadle, T. M. Beadle & Co., and Aetna Casualty & Surety Company jointly and in solido for $5,000 with interest from date of judicial demand until paid. Further, there is judgment in favor of plaintiff and against T. M. Beadle and T. M. Beadle & Co., jointly and in solido for an additional $2,048.91, with interest from date of judicial demand until paid. All costs are assessed against the three defendants.
AMENDED, AFFIRMED AND RECAST.

. Insurance Company of North America was erroneously named as the surety in plaintiffs original petition but was released from the suit.